UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:12-CV-00493

MARK S. RADELL, individually
and on behalf of all other persons
similarly situated,                                                                    **Plaintiff**

v.

MICHELIN RETIREMENT PLAN,                                              **Defendant**

## MEMORANDUM OPINION

This administrative review is before the Court upon Plaintiff's Complaint (Docket No. 1). Defendant submitted an Answer (Docket No. 7). Plaintiff also submitted a Motion for Summary Judgment (Docket No. 22), to which Defendant responded (Docket No. 27). Plaintiff replied (Docket No. 28), and this matter is now ripe for adjudication. For the reasons that follow, Defendant's decision relative to Plaintiff's claim will be affirmed, and Plaintiff's claim will be dismissed.

## BACKGROUND

This case concerns the calculation of disability retirement pension benefits. Plaintiff Mark S. Radell terminated from Michelin North America while participating in the company's Long Term Disability (LTD) program. He later filed this class action complaint against the Michelin Retirement Plan ("the Plan"), which is governed by the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001 *et seq.*) ("ERISA").

The Plan reduced Plaintiff's Disability retirement income benefits based on his election to commence payment of the pension prior to his Normal Retirement Date (i.e.,

1

age 65). Plaintiff argues that the Plan's reduction of his pension benefits (and those of the putative class members) directly violated the Plan Document's terms (Docket No. 1 at 2).

### I. The Plan Document's terms required the Plan to reduce Plaintiff's benefits based on his early commencement of payment.

The Plan allows participants to retire on one of three dates: the Normal Retirement Date (defined as age sixty-five), the Early Retirement Date, or The Postponed Retirement Date (Docket No. 22-3 at 23). The Plan further provides for a Disability Retirement Date for qualifying participants (Docket No. 22-3 at 23).

The Plan defines an Annuity Commencement Date as "the first day of the first month for which an amount of Pension is payable to [a] Participant or Beneficiary as an annuity . . . ." (Docket No. 22-3 at 11). Plaintiff was age fifty-seven years and nine months upon his Annuity Commencement Date of March 1, 2012 (Docket No. 16-1 at 15; Docket No. 16-2 at 2)

Section 4.5 discusses the Plan's Disability Retirement benefit, setting forth three conditions that a participant must satisfy while an Employee to be entitled to this benefit (Docket No. 22-3 at 26-27).[1] If a Participant fulfills these conditions, "he shall be entitled to receive no less than the Pension accrued by him as of the date he was first Disabled. This Pension shall be calculated according to Section 4.1 of the Plan . . . ."

---

[1] "The three conditions are:

   (1)  The employee must become Disabled prior to his Normal Retirement Date.
   (2)  The Employee must have completed at least five (5) Years of Vested Service as of the date he was first Disabled.
   (3)  The Employee must either remain Disabled until his Early or Normal Retirement Date (See Section 4.6 of the plan) or, if the Disabled Participant cease to be Disabled, present himself for return to work to the Employer within thirty (30) days after he ceases to be Disabled."

Docket No. 22-3 at 26-27.

(Docket No. 22-3 at 26). Section 4.1(A) requires the amount of the benefit to be calculated based on the Participant commencing the benefit at Normal Retirement Date.

Finally, Section 4.5 explains that the pension benefit that a participant who collects Disability Retirement will receive is calculated based on Section 4.1 (Docket No. 22-3 at 26).[2] According to this Section, the benefit is calculated based on its commencement on or after the Normal Retirement Date. However, Section 4.3(B) allows a participant to commence his benefit on or after an Early Retirement Date prior to his turning sixty-five if he as at least fifty-five and has completed at least ten years of vested service.[3]

Plaintiff was eligible to elect to commence payment of his Disability Retirement pension benefit prior to his Normal Retirement Date on his Early Retirement Date of March 1, 2012 (Docket No. 16 at 15, 46, 48, 62-63). According to Section 4.3(B), a participant who retires on his Early Retirement Date may elect to receive his pension benefit "commencing on his Early Retirement Date or on the first day of any month thereafter, multiplied by the factor contained in Table A-Actuarial Equivalent Factors for the Participant's age on the date payment is to commence" (Docket No. 22-3 at 25).

---

[2] Section 4.1 reads in relevant part:
"(A) Retirement Formula. Subject to the provisions of Sections 4.7 [Cost-of-Living Adjustment] and 4.8 [Maximum Retirement Benefit] of the Plan, a Participant's annual retirement Pension *commencing on or after such a Participant's Normal Retirement Date* shall be an amount equal to:
  (1) one and three-tenths percent (1.3%) of that part of such Participant's Average Final Compensation which is not in excess of his Covered Compensation, multiplied by his Credited Years of Service, not in excess of thirty-five (35) such Years (as hereinafter defined) plus,
  (2) one and eight-tenths percent (1.8%) of that part of such Participant's Average Final Compensation which is in excess of his Covered Compensation (if any), multiplied by his Credited Years of Service, not in excess of thirty-five (35) such Years, provided that no more than thirty-five (35) Credited Years of Service shall be taken into account under the Plan."

Docket No. 22-3 at 24 (emphasis added).

[3] Section 3.3, Docket No. 22-3 at 23.

Plaintiff elected this option. Accordingly, Section 4.3(B) mandated that the Plan reduce Plaintiff's pension benefit by performing the actuarial calculation it described.

## II. The Michelin Retirement Plan Summary Plan Description further explains the reduction in the Disability retirement benefit.

The Michelin Retirement Plan Summary Plan Description (SPD) explains that a participant may elect to take the early retirement benefit after reaching age fifty-five and completing at least ten years of vesting service. It continues, "[A]n early retirement factor will be applied to the calculation to reflect the fact that you are taking your benefit prior to the normal retirement age of 65" (Docket No. 22-4 at 7). Further, "[i]f you retire early and elect to begin receiving your retirement benefit before you reach age 65, your benefit will be reduced. This is because your benefit payments are expected to be made for a longer period of time" (Docket No. 22-4 at 11).

## III. When Plaintiff expressed concern that his benefits were miscalculated, the Plan explained its application of the Plan Document's terms.

On January 30, 2012, the Michelin Personnel Service Center ("PSC") informed Plaintiff that he accrued a retirement benefit from the Plan and that he may be eligible for retirement. The letter included a statement of Plaintiff's current accrued retirement benefits and invited him to contact the PSC with any concerns (Docket No. 16-1 at 39).

In addition, a second letter of the same date included, among other documents, a benefit election form and two documents titled "Participant Summary Page" ("PSP") The first PSP reflected the data that the Plan used to calculate Plaintiff's benefits and asked him to verify its accuracy (Docket No. 15-2 at 4). The second PSP, a "Calculation Summary Page," conveyed the formula for calculating Plaintiff's total benefit payable at his Normal Retirement Date and the resultant calculations (Docket No. 16-2 at 5). The

Calculation Summary Page reflected an "Early Retirement Adjustment" of 0.660 to Plaintiff's monthly pension benefit. Plaintiff's wife signed both documents as his power of attorney; on the Calculation Summary Page, she wrote, "Disagree with early adjustment. In dispute w/Michelin at current date" (Docket No. 16-2 at 5).

Plaintiff expressed his concerns via e-mail to Michelin personnel on February 7, 2012 (Docket No. 16-1 at 49-50). Plaintiff wrote that "[t]he base calculations appear correct but they then deducted like I was taking early retirement so they reduced the payment by 40%. By reading the MRAP policy it clearly stated that if you retire while on disability the calculations should be done like you are 65. It obviously makes [a] significant difference" (Docket No. 16-1 at 49).

Michelin employee Connie Judkins replied to Plaintiff on February 13, 2012, explaining:

> The MRP provides a full benefit at the plan's stated normal retirement date of age 65. Since you are over age 55 and have more than 10 years of service, you can elect to retire. However, a retirement [commencement] prior to age 65 will be classified as an early retirement, and early retirement reduction will apply. Under the disability provisions of the plan, you have continued to earn years of service under the plan since your termination date in 2007. However, there are no disability provisions within the plan that provide an un-reduced benefit prior to your age 65.

Docket No. 16-1 at 48. Judkins further advised Plaintiff to contact the PSC should he require additional assistance with the retirement process (Id.).

Plaintiff responded to Judkins that day, explaining that he believed that the Plan language concerning disability retirement did not allow for application of the "early retirement factors" to the calculation of his pension benefit (Docket No. 16-1 at 47). Judkins replied on February 16, 2012:

5

> The language you are looking at below means that a person on disability can continue to accrue benefits in the Plan through their age 65, which is the nominal retirements age of the Plan. It is also the age at which LTD benefits normally end. This language does not mean that if a person chooses to retire prior to their age 65 and begin their retirement benefit (which is now coordinated with their LTD benefit), that the retirement benefit is unreduced. It is reduced based on the age at which a person elects to retire.

Docket No. 16-1 at 46.

Plaintiff submitted his retirement election documents to Michelin on February 28, 2012, noting that "the actual dollar amounts in the calculations are under dispute and so noted with the signatures" (Docket No. 16-1 at 40). The PSC responded on March 12, 2012, informing Plaintiff that he became a Michelin Retiree as of March 1, 2012 and that his benefit would commence on that date (Docket No. 16-2 at 2).

### IV. The Pension and Benefits Appeals Board denied Plaintiff's appeal of his benefit claim.

Section 8.2.A(E) of the Plan Document directs the Plan's Board to create a Pension and Benefits Appeals Board, to which it delegates the authority to hear and decide "all appeals of denied applications for benefits under the Plan, and the authority to interpret any provision of the Plan . . . ." (Docket No. 22-3 at 57). The Plan Document elaborates upon the Board's authority, explaining

> The Board shall have the power to take all actions and to make all decision necessary or proper to carry out the Plan. Subject to Paragraph (E) below the determination of the Board as to any question involving the general administration and interpretation of the Plan shall be final, conclusive and binding. . . . Without limiting the generality of the foregoing, the Board shall have the following powers:
> . . .

> (C) To interpret the Plan in its sole discretion, and to resolve ambiguities, inconsistencies and omissions, which finding shall be binding, final, and conclusive;
> (D) To decide on questions concerning the Plan and the eligibility of an Employee to participate in the Plan, in accordance with the provisions of the Plan;
> (E) To determine the amount of benefits which shall be payable to any person in accordance with the provisions of the plan and to provide a full and fair review to any Participant whose claim for benefits has been denied in whole or in part[.]

Docket No. 22-3 at 52.

On March 12, 2012, Plaintiff wrote the Michelin Pension and Benefits Appeals Board ("Appeals Board") protesting the reduction of his pension benefit (Docket No. 16-1 at 16-19). The Board treated the letter as an appeal (Docket No. 16-1 at 45). In response, the Board's Appeals Administrator, Karen Milner, explained that Plaintiff's "choice to retire before the normal retirement date (age 65) actuarially reduces your pension amount for your age on the date payment begins" (Docket No. 16-1 at 25-26). Milner further informed Plaintiff that the Appeals Board would consider his case and advised him of his rights in this proceeding (Id. at 25-26).

The Appeals Board considered Plaintiff's complaints at its April 16, 2012 meeting and unanimously voted to deny Plaintiff's request to receive an unreduced pension benefit commencing prior to age sixty-five (Docket No. 16-4 at 3). The Appeals Board notified Plaintiff of its decision in a letter dated April 18, 2012 and informed Plaintiff of his right to bring a civil action under ERISA (Docket No. 16-1 at 13).

**STANDARD**

Generally, courts "review a plan administrator's denial of ERISA benefits de novo." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115) (1989)). However, when " a plan vests the administrator with complete discretion in making eligibility determinations, such determinations will stand unless they are arbitrary or capricious." *Id.* "The arbitrary and capricious standard is the least demanding form of judicial review and is met when it is possible to "offer a reasoned explanation, based on the evidence, for a particular outcome." *Admin. Comm. Of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson*, 164 F.3d 981, 989 (6th Cir. 1999) (citation omitted). "Consequently, a decision will be upheld 'if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Evans v. Unum Provident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (citations omitted).

Plaintiff argues that the Court should apply a de novo standard of review (Docket No. 22 at 7-12). He argues that three factors weigh in favor of this less deferential standard: first, that deferential review does not apply to a plan administrator's decision that is contrary to plan terms; second, that the Plan did not set forth in writing its specific reason for denying Plaintiff's claim; and third, that by failing to exercise the discretion granted to it, the Plan waived any deference to which it may have been due (Id.). However, Plaintiff's arguments are not persuasive. The Court will apply the arbitrary and capricious standard for the below reasons.

First, the Appeals Board was vested with the authority to decide appeals of denied applications for benefits and to interpret the Plan's provisions according to its

claims procedure (Docket No. 22-3 at 57). Plaintiff opposes the Appeals Board's application of the Plan terms to his claim and argues that its application was unreasonable. However, although Plaintiff may disagree with the Appeals Board's decision, this does not mean that its actions were contrary to the Plan's terms. Accordingly, this argument fails.

Second, Plaintiff argues that the Appeals Board was required to provide a written explanation of the reasons that it denied Plaintiff's claim and that such explanation constituted a "condition precedent" to application of the Appeals Board's discretion. Plaintiff argues that because the Plan did not set forth its specific reasons for the denial, discretionary review should not apply (Docket No. 22 at 8-9). However, no precedent concerning the ERISA standard of review supports Plaintiff's argument. Furthermore, "[t]he Sixth Circuit has never subjected a claim to *de novo* review on the basis of procedural error." *Spectrum Health, Inc., v. Good Samaritan Employers Ass'n, Inc. Trust Fund*, 2008 WL 5216025 at *6 (W.D. Mich. 2008) (applying the arbitrary and capricious standard even though the procedural errors at issue were "numerous and fundamental"). Therefore, Plaintiff's second argument is also without merit.

Finally, Plaintiff argues that the Appeals Board failed to exercise the discretion granted to it by failing to provide a specific reason for the denial in its Appeal Denial letter (Docket No. 22 at 11-12). The Sixth Circuit precedents upon which Plaintiff relies are, however, distinguishable from the case at bar.

In *Shelby Co. Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefits Plan*, 501 F.3d 355 (6th Cir. 2009), a third-party administrator decided to deny coverage and only "informed" Majestic of its decision. *Id.* at 387. Here, however, the

Appeals Board considered Plaintiff's appeal, reviewed the record and the many communications between Plaintiff and the Plan, and determined that Plaintiff's appeal should be denied (AR 13, 15, 158). Furthermore, *Thompson v. J.C. Penney Co., Inc.*, 2001 WL 1301751 (6th Cir. 2001) concerned a Plaintiff who did not receive a formal written denial. Neither of these cases is apposite to Plaintiff's argument. In the case at bar, the Appeals Board exercised its discretion. The Court will accordingly apply the arbitrary-and-capricious standard.

Still, while the arbitrary and capricious standard is deferential, it is not "without some teeth." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation omitted). A court's obligation to review the administrative record "inherently includes some review of the quality and quantity of the. . . evidence and the opinions on both sides of the issues." *Id.* Without such a review, "courts would be rendered to nothing more than rubber stamps for any plan administrator's decision as long as the plan is able to find a single piece of evidence – no matter how obscure or untrustworthy – to support a denial of a claim for ERISA benefits." *Id.*

The standard of review may be affected by inherent conflict of interests, such as when a plan administrator both determines and pays for benefits. A court must consider this potential conflict of interest, but only as one factor in its analysis. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). Such conflicts do not change the standard of review. *Glenn*, 554 U.S. at 116-17.

**DISCUSSION**

"When interpreting ERISA plan provisions, general principles of contract law dictate that [courts] interpret the provisions according to their plain meaning in an ordinary and popular sense." *Williams v. International Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000). Furthermore, "each provision of a contract should be interpreted as part of an integrated whole, to the end that all of the provisions may be given effect if possible." *Musto v. American Gen. Corp.*, 861 F.2d 897, 906 (6th Cir. 1988). With these principles in mind, the Court finds that the plain meaning of the Plan Document requires reduction of Plaintiff's benefits in light of Sections 4.1 and 4.3. Accordingly, the Appeal Board's decision was neither arbitrary nor capricious and will be upheld.

**I.     The Plan Document's terms require the reduction of Plaintiff's Disability Retirement benefits based on his age at the Annuity Commencement Date.**

ERISA requires a plan administrator to "act in accordance with the documents and instruments governing the plan." *Kennedy v. Plan Adm'r for DuPont Savings and Investment Plan*, 555 U.S. 285, citing 29 U.S.C. § 1104(a)(1)(D). Accordingly, a claim for benefits "stands or falls" by the plan's terms. *Id.*

Plaintiff argues that because his Disability Retirement pension was calculated based on Section 4.1 of the Plan Document and Section 4.1 does not discuss any reduction, the reduction is invalid (Docket No. 22 at 12-14). Plaintiff argues that "[r]educed benefits are only applicable to Early Retirement Benefits payable under Section 4.3" and that the Disability Retirement benefit makes no reductions for commencement prior to age sixty-five (Docket No. 22 at 12-13). Based on these

contentions, Plaintiff argues that the Plan added terms to the Plan Document by reducing his benefit for commencement prior to age sixty-five (Docket No. 22 at 4, 14).

Under Section 4.5, a participant's Disability Retirement benefit is to be calculated according to Section 4.1 (Docket No. 22-3 at 26-27). Section 4.1(A) establishes the formula for calculating the annual retirement Pension "commencing on or after such Participant's Normal Retirement Date . . . ." (Docket No. 22-3 at 24). The calculation of the Amount of Disability Retirement pension is based on the benefit's commencing at or after age sixty-five; therefore, there is no reason that Section 4.1 would explain reduction of the benefit for those who elect to commence collecting their pension at or after their Early Retirement Date.

Plaintiff was eligible to retire on his Early Retirement Date of March 1, 2012, at fifty-seven years and nine months (AR 15, 36, 48, 62-63). However, Section 4.3(B) states explicitly that if an Early Retiree elects to receive his pension before his Normal Retirement Date, Actuarial Equivalent Factors will be applied based on his age when payment is to commence (Docket No. 22-3 at 25). Because Plaintiff made such an election, Section 4.3(B) required the Plan to reduce his benefit by the relevant AEF.

## II.    The Summary Plan Document explains the reduction in benefits.

The statements within the Summary Plan Description do not themselves constitute the Plan's terms. *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011). Nonetheless, the SPD explains that the Disability Retirement pension is to be calculated based on the participant commencing the benefit at age sixty-five and makes clear that reductions will apply for early retirement "because [the participant's] benefit payments are expected to be made for a longer period of time" (Docket No. 22-4 at 11).

This explanation is consistent with the Plan Document and adequately explains Plaintiff's reduction in benefits.

### III. The Plan's cumulative communications to Plaintiff sufficiently explained the reasons for the denial of his claim.

Plaintiff argues that the Appeals Board failed to explain its specific reasons for denying his claim in the Appeal Denial letter (Docket No. 22 at 9). However, the Plan's numerous communications with Plaintiff satisfy the purposes of ERISA Section 503, 29 U.S.C. § 1153, which requires a "full and fair review" after a denial.[4]

Judkins' correspondence with Plaintiff of February 13, 2012 explained that early retirement reductions applied to Plaintiff and that the Plan did not provide an un-reduced benefit prior to Plaintiff's turning sixty-five (Docket No. 16-1 at 47-48). Three days later, Judkins further explained the Plan's relevant language, including the fact that an early retiree's benefit is reduced based on the age at which he elects to retire (Docket No. 16-1 at 46). Additionally, Karen Milner, Appeals Administrator, further explained the basis of the denial in a letter dated March 30, 2012 and included copies of the applicable pages of the Plan Document (AR 14, 27-36). The letter also informed Plaintiff of the date and location of the Appeals Board meeting and described his rights associated with the appeals process (AR 14).

---

[4] "In accordance with regulations of the Secretary, every employee benefit plan shall—

  (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
  (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

29 U.S.C. § 1133.

Plaintiff argues that the Denial Letter's failure to provide specific reasons for the denial makes it inadequate under ERISA, which requires the Plan to set[] forth the specific reasons for . . . denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133. Had the Denial Letter been the exclusive explanation offered to Plaintiff, his argument that it was insufficient might well have been convincing. However, viewed in light of the many correspondences between Plan personnel and Plaintiff, the Plan's communications were sufficient to satisfy the purposes of Section 1133 in insuring that Plaintiff understood both the reasons that his claim was denied and his rights to review of the decision. "[J]ustice does not require, indeed it forbids, the reversal of a claim decision based on a technical defect." *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996). Although the Denial Letter may not have independently satisfied Section 1133's requirements, the Plan's communications as a whole adequately notified Plaintiff of the basis of the decision to reduce his pension and informed him of his appeal rights. Accordingly, the Plan substantially complied with Section 1133.

## CONCLUSION

Therefore, having considered the Administrative record and the parties' respective arguments, the Court will affirm the Defendant's decision relative to Plaintiff's Disability retirement pension benefits, and this action will be dismissed. An appropriate order will issue separately with this Opinion.

cc: Counsel